IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAWRENCE W. STRONG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No.   04 C 4971 |
| ) | |
| ) | Judge Robert W. Gettleman |
| JOHN W. SNOW, Secretary, United States ) | |
| Department of the Treasury, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lawrence W. Strong has sued defendant John W. Snow, Secretary of the Treasury, alleging that he was discriminated against based upon his race and perceived disability when he was not hired by the Office of the Comptroller of the Currency ("OCC"). Plaintiff also asserted state law claims for breach of contract and promissory estoppel, but has abandoned those claims.[1] Defendant has moved for summary judgment on the discrimination counts. For the reasons set forth below, defendant's motion is granted.

## FACTS

In August 2000 plaintiff applied for a bank examiner position with the OCC by submitting a resume and application materials to Juanita Southern, the OCC Central Region District Human Resources Manager. Plaintiff sought either of two positions, an OC-10 middle level position, or the slightly higher level OC-12. As part of the application materials, plaintiff submitted a "Supplemental Qualifications Statement" ("SQS"), which is a self-

---

[1] In his response to the motion for summary judgment plaintiff has asked that the court dismiss without prejudice his state law claims. Defendant has not objected to plaintiff's request.

assessment in which the applicant answers questions about his or her skills and background. Plaintiff gave himself very high marks on the SQS.

The application materials were then screened and a list of applicants with SQS scores above a certain cutoff point were selected to proceed to the next step in the selection process, a communications test. Plaintiff was selected to take the test. He was informed of this in a September 14, 2000, letter which outlined the hiring process.

The communications test was developed and validated by an independent contractor. It contained both a written and oral portion and was based on a hypothetical lending scenario. Plaintiff took the test, which was administered by evaluators Jennifer Olds-Morgan, Gwanzetta Anthony, and Christine Salvato. He scored 4.5 out of 10 on the written portion and 5.1 out of 10 on the oral portion. The evaluators' comments indicated that plaintiff's answers were "unorganized," "repetitive," and "lacked substance." Despite his low scores, the evaluators' recommended that plaintiff be given an interview, the next stage in the hiring process, principally because of his extensive work background listed in his application materials. The evaluators' recommendation indicated that the interviewers "should ask probing questions to determine if candidate has ability to analyze/evaluate information and present findings in an exam environment."

Immediately prior to taking the communications test, plaintiff had met with Southern. He asked her about her race to which she replied half African-American and half Mexican. Plaintiff told Southern that he had suffered a stroke and that he had left his previous job at the Federal Deposit Insurance Corporation ("FDIC") because of it. Prior to the test, Southern told Olds-Morgan that "the next candidate was disabled in some manner and that . . . we need to look

beyond that and determine if this person could serve as a national bank examiner." Olds-Morgan has admitted that she perceived plaintiff as having a disability, but that her perception had no effect on the way the evaluators graded plaintiff's answers.

Plaintiff was interviewed on September 27, 2000. The interviews were conducted by two teams of two persons. Plaintiff's interview was conducted by Donelle Ward and Paul Ginger. Ward, who is Caucasian, was an Assistant Deputy Comptroller, a managerial position to whom some of the new hires would report, and who had authority to recommend that an applicant be hired or not hired. She recommended that plaintiff not be hired. She had been trained as an interviewer and had numerous years of experience in hiring for OCC. Each interview team included at least one Assistant Deputy Comptroller. Plaintiff's other interviewer, Paul Ginger, who is also Caucasian, is a Community Affairs Officers and had no training on the application process for bank examiners. Plaintiff was his first interviewee for a job at OCC, although he had experience interviewing candidates for other positions.

The interviewers were not told the applicant's score on the communications test. At the start of the interview day the interview teams met to decide which questions from a pre-printed list would be asked. Each applicant interviewed on a particular day was asked the same questions, although follow-up questions were specific to the applicant, based on answers given.

Ward noted that during the interview, plaintiff's answers lacked substance, were not responsive and were inconsistent with the extensive experience listed on his resume and application. Ward specifically made a note to "do reference checks" on plaintiff. At the Treasury Department's EEO hearing initiated by plaintiff after not receiving the position, Ward testified that she made the note "because my observation in the interview was that his

performance, particularly the communication skills, really was not consistent with the types of experience, level of experience that had been represented on his resume." Ward also noted that plaintiff's answers were rambling, repetitious and unfocused, and that in general plaintiff failed to express himself in a professional manner.

After the interviews were concluded, the interviewers met to decide which candidates they would recommend to be offered the position. Neither Ward nor Ginger recommended that plaintiff be offered a position at any level.

After being informed of the decision, plaintiff filed a formal EEO discrimination complaint claiming that he was not selected due to his race, physical disability, age and gender. The Treasury Department's EEO office conducted a full investigation. In that complaint, plaintiff claimed that the interviewers conspired against him by asking vague and confusing questions that were not previously identified in the September 14, 2000, letter he received informing him that he was selected to take the communications test. Plaintiff's theory was that the agenda for the hiring process was contained in the letter, which indicated that "upon successful completion of phase II [communications test] you will move to phase III which provides our management officials an opportunity to interview you to ascertain your specific interests in working for OCC." Thus, plaintiff argued that the questions asked of him deviated from the purpose of the interview.

The EEOC held a hearing on the issues of race and perceived disability discrimination.[2] Seven witnesses testified. The administrative law judge found that plaintiff had presented a prima facie case, but found no discrimination because the agency had articulated a legitimate

---

[2]Plaintiff dropped his age and gender based claims.

non-discriminatory reason for not hiring plaintiff. Plaintiff appealed, and the decision was affirmed.

## DISCUSSION

Summary judgment is appropriate when the moving papers and affidavits show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ P. 56(e). Becker v. Tenebaum-Hill Associates, Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists "when the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). This standard is applied with added rigor in employment discrimination cases, were issues of intent and credibility often dominate. Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1038 (7th Cir. 1993). The non-moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

Defendant has moved for summary judgment on plaintiff's discrimination counts, arguing that the undisputed facts demonstrate that plaintiff cannot establish that the decision not

5

to hire plaintiff was the result of racial or disability discrimination.  Because plaintiff has no direct evidence of either racial or disability discrimination, he relies on the burden-shifting requirements for discrimination cases set for in <u>McDonnell-Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  Under this approach, plaintiff bears the burden of establishing a prima facie case of discrimination by the preponderance of the evidence.  See <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 505 (1993).  Success by the plaintiff at this stage creates a rebuttable presumption of discrimination, shifting the burden to defendant to articulate a legitimate, non-discriminatory reason for the employment decision.  <u>Anderson v. Baxter Healthcare Corp.</u>, 13 F.3d 1120, 1122 (7th Cir. 1994).  If the defendant is successful, the presumption of discrimination dissolves, and the burden shifts back to the plaintiff to prove that the defendant's proffered reasons are a pretext for discrimination.  <u>Id.</u>  At all times, the plaintiff bears the burden of persuading the trier of fact that the defendant intentionally discriminated against him.  <u>Hughes v. Brown</u>, 20 F.3d 745, 747 (7th Cir. 1994).

In the instant case, defendant assumes for purposes of its motion that plaintiff can establish a prima facie case of racial and/or disability discrimination.  Defendant articulates a legitimate non-discriminatory reason for its failure to hire plaintiff:  that plaintiff's answers to questions during the interview lacked substance and were rambling and off topic, resulting in neither interviewer recommending that plaintiff be hired.

Faced with this legitimate reason for the decision in question, plaintiff bears the burden of establishing that the articulated reason is a pretext.  The Seventh Circuit has recently clarified that in this context, pretext means a lie, or that the stated reason for the decision was not in fact the actual reason.  If plaintiff can offer evidence that the stated reason was not the actual reason,

the case cannot be decided on summary judgment because a trier of fact would be entitled to infer a discriminatory motive from the pretextual character of the employer's grounds. Forrester v. Rauland-Borg Corp., __ F.3d __ , 2006 WL 1767760 (7th Cir. June 29, 2006).

To establish pretext, plaintiff attempts to demonstrate that Ward's rejection of plaintiff "is specious because her reasons keep changing." To demonstrate this, plaintiff points to Ward's explanation of her decision at various points in the proceedings, arguing that her reasons are inconsistent. For example, in a declaration presented in the EEO investigation, Ward stated that plaintiff had difficulty formulating coherent answers to questions and that his answers were repetitive and rambling. In her testimony at the EEOC hearing, Ward stated that plaintiff's answers were non-responsive and not focused on the questions asked. In her deposition taken in the instant case, Ward stated that plaintiff used transitions that she did not understand, inappropriately used words and jumped off target.

Contrary to plaintiff's assertions, there is nothing inconsistent or suspicious in Ward's three different descriptions of her view of plaintiff's interview. Ward has consistently stated that plaintiff was unable to give direct, concise answers to the pre-determined questions. Nothing in Ward's three separate descriptions suggests that she is lying. Indeed, the fact that Ward's to answers these three questions differed slightly, yet were perfectly consistent, creates less suspicion rather than more.

Moreover, there is no dispute that Ward wrote on her interview notes to check plaintiff's credentials because, in her opinion, his answers did not seem to match the experience plaintiff listed on his resume. As it turned out, Ward's suspicions were correct. Plaintiff had listed that he worked for two and a half years as "Manager-Commercial Real Estate" for the FDIC,

7

claiming to be responsible for "mortgage credit underwriting," and the he "underwrote mortgage portfolios" and performed risk management. In fact, plaintiff worked for the FDIC as a "Liquidation Assistant" for approximately eight months before being terminated involuntarily. According to plaintiff's supervisor at the FDIC, plaintiff's description on his resume of his employment at the FDIC was a "blatant and complete" lie.[3] The record reveals that there are other "inconsistencies" on plaintiff's resume.

Plaintiff argues that his false statements on his resume and job applications are relevant only to the issue of damages and not liability. See McKennon v. Nashville Banner Publishing Co., 513 U.S. 352 (1995) ("after acquired" evidence limits plaintiff's damages but does not limit liability). Plaintiff is correct that to the extent that defendant is arguing that plaintiff would not have been hired in any event because a background check would have discovered the falsehoods, that is an affirmative defense under McKennon that limits damages, but has no bearing on liability.

The evidence is also relevant, however, to show that the articulated reason for non-selection was not pretextual. Gant v. Wallingford Board of Education, 195 f.3d 134, 147 (2d Cir. 1999). At the time that Ward made her comments on her interview notes, and when she made her EEO declaration and testified in the EEOC hearing, she had no idea that plaintiff had lied on his resume. Thus, the fact that Ward was suspicious of plaintiff's credentials, which suspicion proved to be well-founded, shows that Ward's assessment of plaintiff was accurate, and that Ward has been truthful. Id.

---

[3]Plaintiff claims to have resigned from his employment with the FDIC on January 24, 1991, but the record reveals a termination letter sent to him one week prior, on January 17, 1991.

8

In short, plaintiff has failed to offer any evidence to suggest that the reasons given by Ward (and Ginger) for not recommending plaintiff are anything but truthful. Consequently, plaintiff has failed to make the requisite showing that defendant's decision not to hire him is pretextual. Defendant's motion for summary judgment is granted.

## CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is granted as to Counts I through III. Counts IV and V (improperly labeled VII) are dismissed without prejudice.[4]

**ENTER:** **July 27, 2006**

**Robert W. Gettleman**
**United States District Judge**

---

[4] The court gratefully acknowledges the excellent work performed on Mr. Strong's behalf by his appointed attorneys Darlene A. Vorachek and Allison M. Lindy of Abrahamson, Vorachek & Levinson.